**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-02476-CMA-MJW

WILLIE BARLOW, JR.,

     Plaintiff,

v.

C.R. ENGLAND INC.,

     Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

     Defendant C.R. England, Inc.'s Motion for Summary Judgment (Doc. # 55) is again before the Court, this time on remand from the Tenth Circuit Court of Appeals. As discussed below, the motion is granted in part as to Plaintiff Willie Barlow, Jr.'s claim for wrongful discharge from his janitorial contract, which is the only claim currently at issue.

## I. BACKGROUND

### A. FACTS[1]

     The site manager for Defendant's maintenance yard, John Smith ("Smith"), hired Plaintiff in February 2005 as a security guard and served as Plaintiff's supervisor.

---

[1] The facts in this matter were set forth in the order granting Defendant's summary judgment motion, *Barlow v. C.R. England, Inc.*, 816 F. Supp. 2d 1093 (D. Colo. 2011), and the opinion of the Tenth Circuit affirming that order in part and reversing it in part, *Barlow v. C.R. England, Inc.*, 703 F.3d 497 (10th Cir. 2012). The facts summarized here are included for their relevance to the state law claim at issue on remand; they are undisputed unless otherwise noted.

In February 2007, Plaintiff began performing maintenance services for Defendant's office building through a company called E & W Janitorial & Maintenance Services ("E & W") that he formed with his partner, Ernestine Hudson.  Plaintiff and Ms. Hudson obtained a cleaning license for E & W, created invoices and a separate bank account for the business, and filed a separate income tax return for it.

While performing security guard duties at Defendant's maintenance yard on June 6, 2007, Plaintiff was hit on the head by a malfunctioning 300-400 pound automatic gate.  As a result of the injuries he sustained, Plaintiff claims to suffer from balance problems and disabling pain in his back, neck, head, and jaw, all of which interfere with his ability to work and make it difficult for him to stand, walk, lift, and stoop.  Plaintiff's physician imposed a lifting restriction of not more than 25 pounds.

Plaintiff filed for workers' compensation on June 7, 2007, and was subsequently granted benefits.  He continued to work as both a security guard and a janitor.  In December 2007, Smith terminated Defendant's contract with E & W due to his concern that Plaintiff was performing janitorial services during his security guard shifts and lifting more than 25 pounds.  Plaintiff obtained workers' compensation until April 30, 2008, when his employment with Defendant as a security guard was also terminated.

## B.    PROCEDURAL HISTORY

Plaintiff asserted the following five claims for relief: (1) racial discrimination in violation of 42 U.S.C. § 1981(a); (2) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; (3) wrongful discharge in violation of public policy; (4) racial

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e;

and (5) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201.

On September 7, 2011, the Court granted Defendant's Motion for Summary

Judgment. *Barlow v. C.R. England, Inc.*, 816 F. Supp. 2d 1093 (D. Colo. 2011), *aff'd in

part, rev'd in part*, 703 F.3d 497 (10th Cir. 2012). Defendant appealed, and the Tenth

Circuit issued its opinion on December 26, 2012. *Barlow v. C.R. England, Inc.*, 703 F.3d

497 (10th Cir. 2012) (affirming this Court's ruling regarding Plaintiff's race discrimination

and FLSA claims (Claims 1, 4, and 5)). The Tenth Circuit did not address the ADA claim

(Claim 2), because Plaintiff did not appeal the disposition of that claim.

As to the Court's ruling on Plaintiff's state law wrongful discharge claim (Claim 3),

the Tenth Circuit reversed and remanded for further proceedings. Claim 3 has two

parts: "wrongful discharge from security guard position" and "wrongful discharge from

janitorial contract." *Id*. at 507-10. Regarding the first part, the Tenth Circuit held that

Plaintiff had "raised a genuine issue of material fact as to whether he was [wrongfully]

fired from his security position." *Id*. at 509. That issue is now ripe for resolution at trial,

and the Court will not address it further here. As to the second part (*i.e.*, termination of

the janitorial contract), the Tenth Circuit remanded to have this Court address three

issues, which the Court will do in the Analysis section below.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997). A fact is "material" if, under the pertinent substantive law, it is essential to the proper disposition of the claim. *See, e.g.*, *Wright v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claims. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). However, when the movant does not bear the ultimate burden of persuasion at trial, "it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998)). In either scenario, if the movant meets its burden, the non-movant may not rest on its pleadings; instead, it must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-26 (1986) (internal quotation marks and citation omitted).

When reviewing a summary judgment motion, the Court views the record and draws all reasonable inferences therefrom "in the light most favorable to the party opposing summary judgment." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007).

## III. ANALYSIS

As mentioned, the only claim to be addressed here is Plaintiff's claim of wrongful discharge from his janitorial contract. In its opinion, the Tenth Circuit requested "further

findings" regarding three issues:  (A) whether state or federal law applies to the claim; (B) the basis for the Court's conclusion that independent contractor status precludes a wrongful discharge claim; and (C) the rationale the Court applied in determining that Plaintiff was an independent contractor.  *Barlow*, 703 F.3d at 510.  The Court will address these issues in turn.

## A.   APPLICATION OF STATE LAW

The Tenth Circuit stated that this Court's order was unclear as to "whether federal or state law was applied in determining Barlow's employment status."  *Id.*  In its order, this Court cited state common law factors established by the Colorado Supreme Court in *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992), and restated in *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1235 (10th Cir.1997).  *Barlow*, 816 F. Supp. 2d at 1105.  While these citations indicate that Colorado common law was applied, the factors recited therein are used to determine whether a worker who has already been deemed an employee can state a *prima facie* case of wrongful discharge; they do not help in deciding whether a worker is, to begin with, an employee or an independent contractor.  Therefore, the Tenth Circuit's suggestion to clarify what law was applied in determining that Barlow was an independent contractor is well taken.

To determine whether a worker is an employee or an independent contractor in a wrongful discharge claim, the parties assert, and the Court agrees, that the state common law standard governs.  (Doc. ## 105 at 5; 106 at 5); *see Zinn v. McKune*, 143 F.3d 1353, 1357 (10th Cir. 1998) (stating, in a Title VII case, that the definition of employee "should be fleshed out by applying common-law agency principles to the facts

and circumstances surrounding the working relationship of the parties"); *see also Roth*

*v. Am. Hosp. Supply Corp.*, 965 F.2d 862, 866 (10th Cir. 1992) (noting that, in the ERISA

context, the Supreme Court has established that, absent a federal statute to the

contrary, the test for worker status comes from the common law).  In Colorado, this

standard consists of multiple factors that courts apply based on the particular

circumstances of individual cases.  *See, e.g.*, *Norton v. Gilman*, 949 P.2d 565, 567-68

(Colo. 1997).

## B.   BASIS FOR DETERMINING THAT INDEPENDENT CONTRACTOR STATUS PRECLUDES WRONGFUL DISCHARGE CLAIM

Because resolving Plaintiff's worker status would be unnecessary if independent

contractors had the same legal protection from wrongful discharge as employees, the

Court will first clarify why independent contractor status precludes wrongful discharge

claims.  "Colorado adheres to the 'at will employment' doctrine, subject to a public policy

exception," *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 495 (10th Cir. 1992) –

in other words, employers have the discretion to fire employees unless doing so would

injure the public good.  One way the public good may be injured is if an employee is

fired in retaliation for the employee's lawful pursuit of a worker's compensation claim;

in such cases, "Colorado courts have explicitly recognized an employee's claim for

wrongful discharge in violation of public policy."  *Anderson v. Royal Crest Dairy, Inc.*,

281 F. Supp. 2d 1242, 1249 (D. Colo. 2003) (citing *Lathrop v. Entenmann's, Inc.*, 770

P.2d 1367 (Colo. App. 1989)).

Colorado courts, however, have not decided if wrongful discharge protection applies to independent contractors, and therefore this Court must "predict how Colorado's highest court would rule on enlarging this public policy exception to include independent contractors." *Wisniewski v. Med. Action Indus., Inc.*, No. 99-D-409, 2000 U.S. Dist. LEXIS 19321, at *7, 8 (D. Colo. Sept. 25, 2000) (unpublished). The majority rule is that wrongful discharge protection is not available to independent contractors. *Id.* at *10 (collecting cases); *Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 798 (3d Cir. Oct. 1, 2010) (unpublished) ("no Pennsylvania case has extended this cause of action to independent contractors, nor are we aware of any such case"); *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 683 (Iowa 2001) ("Generally, most courts have refused to extend a wrongful termination action to independent contractors and other non-employees."); *Sistare-Meyer v. Young Men's Christian Ass'n.*, 58 Cal. App. 4th 10, 14 (1997) (the state constitution's specific protection against wrongful, race-based employment discrimination does not apply to independent contractors); and *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.*, 851 P.2d 946, 948 (Idaho 1993) (claim of unlawful age- and gender-based termination in violation of public policy was dismissed because claimant was deemed to be an independent contractor).

The majority rule is one that is so deeply embedded as to be frequently invoked, yet rarely explained. And when it is explained, such explanation tends to lack depth. For example, the New Jersey Supreme Court has held that only employees, not contractors, are entitled to wrongful discharge protection because employees "are under

the total control of the employer and without separate or independent contractual

rights." *MacDougall v. Weichert*, 677 A.2d 162, 166 (N.J. 1996).

Based on the majority rule, independent contractors may not state wrongful

discharge claims and, hence, do not enjoy wrongful discharge protection.  As Judge

Daniel stated in *Wisniewski*, "[i]t is simply not the role of a federal court to effect [such] a

dramatic shift in [a] forum state's common law" by "expand[ing] the reach of the wrongful

discharge tort to include an entirely new class of Plaintiffs, independent contractors."

2000 U.S. Dist. LEXIS 19321, at *10 (internal quotation marks and citation omitted).

Because Plaintiff failed to cite, and this Court is not aware of, an exception to that rule

in Colorado, Plaintiff cannot succeed on his claim for wrongful discharge in violation of

public policy unless he can show that he was an employee of Defendant and not an

independent contractor.

## C.   RATIONALE FOR CONCLUDING THAT PLAINTIFF WAS AN INDEPENDENT CONTRACTOR

Finally, the Court addresses the question of what rationale should be applied in

determining whether Plaintiff was an independent contractor.  *Barlow*, 703 F.3d at 510.

Colorado common law governs the determination of worker status for claims of wrongful

discharge in violation of public policy.  *See Roth*, 965 F.2d at 866 (in the absence of

clear legislative guidance, "the common law definition of 'employee' is controlling").

The Colorado common law standard consists of numerous factors, including which party

had the right to control the details of performance, the payment of salary, and hiring and

firing.  *Norton*, 949 P.2d at 567.

> However, each factor need not be discussed in every case.  *See Carter
> v. Helmsley-Spear, Inc.*, 71 F.3d 77, 85 (2d Cir.1995); *see also Aymes v.
> Bonelli,* 980 F.2d 857, 861 (2d Cir. 1992) (noting that the list of common
> law factors is easily misapplied when rigidly construed).  Instead of
> applying the common law factors as a rigid test, we consider the
> circumstances of each case.  *See Farmers' Reservoir*, 81 Colo. [69,] 71,
> 255 P. [449,] 449 [(1927)]; *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705,
> 711 (1997).

*Id.* at 567-68.

Both parties agree that the most important factor in the common law test "is the alleged employer's right to control the details of performance."  *Id.* at 567; (Doc. ## 105 at 8; 106 at 6).  Though Plaintiff asserts that he "had very few rights to control the details of his performance of janitorial services" (Doc. # 105 at 8), this Court held, and the Tenth Circuit affirmed, that he was free "to decide how to accomplish his tasks, even if the company reviewed the ultimate work product."  *Barlow*, 703 F.3d at 506 (internal quotation marks and citation omitted).

Several other factors support Plaintiff's status as an independent contractor and not an employee in performing janitorial services.  As noted by the Tenth Circuit, Plaintiff "kept records for [E & W], opened a separate bank account, and filed a corporate tax return."  *Id.*  These facts support a determination that Plaintiff was an independent contractor and not an employee.  *See McIntire v. Bowen-Leavitt Ins. Agency, Inc.*, No. 95-4162, 1996 WL 700034, at *3 (10th Cir. Dec. 5, 1996) (unpublished) (an individual who kept records, maintained a separate trust account, and filed Schedule C tax returns for his company was determined to be an independent contractor in Title VII and ADEA case).  Also, Plaintiff and his partner obtained a cleaning license to operate

9

E & W despite Defendant never having mandated that Plaintiff obtain one.  (Doc. # 105-2 at 6.)  *Cf. Sun Vista, Inc. v. Miss. Dep't of Emp't Sec.*, 52 So. 3d 1262, 1267 (Miss. Ct. App. 2011) (unemployment compensation claimant was determined to be an employee and not an independent contractor because, among other things, he was unlicensed). Additionally, Defendant did not pay Plaintiff a salary for performing janitorial services; instead, when Defendant wrote a check, it was "made out to E & W Janitorial Services." (Doc. # 55-2 at 19, 20.)  E & W "was paid . . . the same amount that the previous [janitorial services] company did [*sic*], which was $400 per month."  (Doc. ## 105-1 at 7; 55-2 at 22.)  *See Norton v. Murphy*, 661 F.2d 882, 885 (10th Cir. 1981) (monthly contract payments are one factor indicating status as an independent contractor). Further, E & W was not precluded from performing janitorial services elsewhere.  (Doc. # 106 at 9; *see* Doc. # 107 at 6).  A non-exclusive relationship between employer and worker is indicative of independent contractor status.  *See Dixon v. Burman*, 593 F. Supp. 6, 11 (N.D. Ind. 1983), *aff'd*, 742 F.2d 1459 (7th Cir. 1984).  Moreover, Plaintiff testified that he "and Ms. Hudson were 'a team,' and when he was hurting and couldn't go to C.R. England, 'she would go and clean the place.'"  (Doc. # 106 at 3 (quoting Doc. # 106-1 at 15).)  Such interchangeability conflicts with a hallmark of employment – *i.e.*, the expectation that the hired individual will be the one performing the specified job functions.  *See Lewis v. ASAP Land Express, Inc.*, 554 F. Supp. 2d 1217, 1223 (D. Kan. 2008) (use of substitute worker without employer approval indicates independent contractor status).  Finally, Defendant contends that the "parties intended to and believed they were creating an independent contractor relationship."  (Doc. # 106 at 9.)

10

Whether this was merely to protect Defendant from having to pay Plaintiff overtime, as Plaintiff asserts (Doc. # 105 at 3), or to replace the previous independent contractor, as Defendant contends (Doc. # 106 at 13), the undisputed fact is that Plaintiff created his own company to secure additional work for himself (Doc. ## 105-2 at 6; 105-1 at 6, 7), and his company related to Defendant much as "any other cleaning service" would have, *Barlow*, 703 F.3d at 507.

The arguments Plaintiff raises in support of his position that he was an employee are not sufficiently compelling to outweigh the aforementioned factors supporting his independent contractor status.  First, Plaintiff argues that Defendant allowed him to choose the days he performed his maintenance duties.  (Doc. # 105 at 3.)  This argument, however, supports Defendant's position because most employees are not granted the liberty of choosing which days they want to work.  Second, Plaintiff asserts that no written contract existed with Defendant for janitorial services.  (Doc. # 105 at 4.)  However, Smith testified that the oral agreement for janitorial services "was pretty well verbalized."  (Doc. # 105-1at 5.)  Plaintiff does not dispute this or cite to a requirement, nor is the Court aware of any, mandating that an independent contractor agreement be in writing.  Third, Plaintiff asserts that Defendant supervised his janitorial work, assigning specific tasks for completion and maintaining control over his work.  (Doc. # 105 at 4.)  However, Plaintiff testified that he was not told in what order to perform tasks or how to accomplish them; rather, as long as he got the work done, he was free to choose how to go about doing it.  (*See* Doc. # 106-1 at 7-8.)  Fourth, Plaintiff asserts that he was provided all supplies and equipment by Defendant.  (Doc. # 105 at 4.)  This

assertion is supported by two oft-cited cases involving contract bus drivers who were deemed to be employees because the transit agencies supplied the buses.  *See Henisse v. First Transit, Inc.*, 220 P.3d 980 (Colo. App. 2009), *rev'd on other grounds*, 247 P.3d 577 (Colo. 2011); *Perkins v. Reg'l Transp. Dist.*, 907 P.2d 672 (Colo. App. 1995).  However, this one factor is not dispositive.  Moreover, with respect to janitorial services, the Court agrees with Defendant that "common sense dictates an independent contractor [might] use the cleaning materials on hand rather than carting mops and buckets from site to site."  (Doc. # 106 at 10.)  Fifth, Plaintiff asserts that he "had very few rights to control the details of his performance . . . ."  (Doc. # 105 at 8.)  However, independent contractors "may be subject to control sufficient to ensure that the end result contracted for is reached, even though they are not subject to control over the means and methods of accomplishing that result."  *Powell v. City & County of Denver*, 973 F. Supp. 1198, 1202 (D. Colo. 1997) (quoting *Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Office*, 859 P.2d 278, 281 (Colo. App. 1993)).  Finally, although Plaintiff asserts that he "performed almost all the janitorial services himself personally" (Doc. # 105 at 9), Plaintiff admits that he and his partner were a team, and that both of them performed janitorial duties for Defendant on behalf of E & W.  (Doc. # 106-1 at 6.)

In conclusion, the common law test for worker status requires a case-specific analysis of the circumstances and, in the instant case, the circumstances indicate that with respect to the provision of janitorial services, Plaintiff's relationship with Defendant

was that of an independent contractor [via E & W] rather than an employee. [2]  As an

independent contractor under state law, Plaintiff is not entitled to relief for wrongful

discharge in violation of public policy. [3]

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary

Judgment (Doc. # 55) is GRANTED IN PART as to Plaintiff's claim for wrongful

discharge from his janitorial contract.

DATED:  July __25__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[2]  Although not directly applicable, the Court has also considered the test for worker status under Colo. Rev. Stat. § 8-40-202(2)(b)(II) (workers' compensation) and the "economic realities test" for worker status as applied to FLSA claims.  In the workers' compensation test, the Colorado legislature set forth a detailed list of factors, many of which overlap with factors in the common law test, to distinguish whether a worker is an independent contractor rather than an employee.  Plaintiff qualifies as an independent contractor under most if not all of the nine statutory factors, which is compelling because "it is not necessary to satisfy all nine criteria of § 8-40-202(2)(b)(II) in order to demonstrate that an individual is an independent contractor and not an employee."  *Nelson v. Indus. Claim Appeals Office of Colo.*, 981 P.2d 210, 212 (Colo. App. 1998). The economic realities test also contains many of the common law factors for determining worker status, including the factor of who controls the details of performance. *Barlow*, 703 F.3d at 506; *see also* Patricia Davidson, *The Definition of "Employee" Under Title VII: Distinguishing Between Employees and Independent Contractors*, 53 U. Cin. L. Rev. 203, 225 (1984).  In Plaintiff's direct appeal, the Tenth Circuit applied the economic realities test and determined that Plaintiff was acting as an independent contractor under the FLSA.  *Barlow*, 703 F.3d at 506.  This further substantiates the Court's conclusion reached in the text above.

[3]  Because the Court's analysis did not "resuscitate Barlow's wrongful discharge claim as regards the janitorial contract," *Barlow*, 703 F.3d at 510, the Court need not address the Tenth Circuit's discussion of causation, *see id*.